# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JOHN C. NALL,                                           :

      Plaintiff,                                     :

                Case No. 3:15cv00408

  vs.                                                   :

                District Judge Walter H. Rice

CAROLYN W. COLVIN,                                      :    Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                               :

      Defendant.                                    :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    <u>Introduction</u>

       This Social Security case has a somewhat unusual backstory.   In May 2008,
Plaintiff John C. Nall filed an application for Disabled Child's Benefits and an application
for Supplemental Security Income.   On February 4, 2009, Administrative Law Judge
David A. Redmond granted both applications, finding Plaintiff eligible for both types of
benefits because he was under a disability.

       Unfortunately, in 2011, when Plaintiff was age twenty-five, he spent time in prison
due to his conviction on a charge of breaking and entering.   *Id*. at 313-420, 462.   Because
of his incarceration, the Social Security Administration stopped paying him benefits as
mandated by law.   *See* 42 U.S.C. § 1382(e)(1); *see also* 20 C.F.R. § 416.211.

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

After Plaintiff's release from prison, he could not begin to again receive benefits unless he filed another application for Supplemental Security Income and the application granted. *See* 42 U.S.C. §1383(j)(1). He protectively filed his post-incarceration application on August 31, 2012. Administrative Law Judge Gregory G. Kenyon denied Plaintiff's application, concluding that he was not under a disability.

Plaintiff brings the present case under 42 U.S.C. § 405(g) challenging ALJ Kenyon's decision. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #14), Plaintiff's Reply, (Doc. #17), the administrative record (Doc. # 7), and the record as a whole.

Plaintiff seeks an Order remanding this case for an award of benefits. The Commissioner seeks an Order affirming the Commissioner's final decision.

## II.  <u>Plaintiff's Vocational Profile and Testimony</u>

On the date Plaintiff filed his presently at-issue application for benefits, he was twenty-seven years old and thus considered to be a younger person under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). ALJ Kenyon concluded that Plaintiff has at least a high school education and has no past relevant work experience.

Plaintiff's school records show that testing when he was in the ninth grade placed his reading comprehension at the first-grade level (1.0), and his ability to perform "numerical operations" was at the third-grade level (3.6). (Doc. #6, *PageID* #254).

Plaintiff testified at an administrative hearing in February 2014 that he was married and had one child, a five-year-old son. They lived in a house with both Plaintiff's and his

2

wife's parents.   He did not have a driver's license because he had not been able to pass the written/verbal test, even though he had tried six times.   *Id*. at 90.

Plaintiff explained that he was in a "special classes" in all subjects when he was in school.   He attended North High but transferred to "God's Team" where he received his high school diploma.   He testified that he "basically paid for the diploma."   *Id*. at 90.

He described his reading and writing skills as "not good at all" and cannot read anything at all.   *Id*. at 91-92.   His handwriting is "sloppy," and he can only write his own name, nothing else.   *Id*. at 92.   He cannot add numbers very well; he must write them down and it takes him a long time.   He cannot do other mathematical calculations except a "little bit of minus."   *Id*. at 93.

Plaintiff's father has a computer in their home, but Plaintiff does not know how to work it.   His wife helps him with emails and Facebook.   He cannot read an internet page.

Plaintiff broke his leg at age fourteen.   He testified that his leg has gotten "progressively worse" over the years.   He stated, "Nowadays it's so bad where it swells up all the time.   If I don't get it propped up it's … pretty swollen."   *Id*. at 95.   Pain in his leg interferes with his ability to focus.   Medication he sometimes takes for pain makes him drowsy and does not take all his pain away.   He was using a cane at the ALJ's hearing and had done so for close to ten years.   It helps him keep pressure off his leg to reduce pain. He feels like he cannot stand on his injured leg and that he will fall.   When his leg starts "acting up," he cannot walk because he also has problems with his left leg.   He shattered his left ankle and has a pin in it.   He noted, "If that starts acting up at the same time I can't

3

even walk." *Id*. at 96.   He can walk about one-half a block and stand for about ten minutes.   He is able to take a shower but holds onto a bar to do so.   He can dress himself.

Plaintiff cooks simple things that can be done quickly, "like hamburgers and fries, something like that." *Id*. at 98.   Sometimes he loses focus and burns food by leaving it on the stove.   *Id*. at 102.   He does the laundry sometimes but needs help with the detergent and with which buttons to push.   He plays cards ("poker games") with his parents and family.   He spends an ordinary day watching TV from the couch with both his legs propped up.   If he does not prop his feet or legs up like this, his pain gets "real bad." *Id*. at 99.   At night he sleeps only two hours at a time due to leg pain and throbbing. *Id*. at 100. Plaintiff estimated his pain levels, with medications, at seven on a zero (no pain) to ten (screaming pain). *Id*. at 101.

Plaintiff experiences mood swings and sometimes gets upset with people.   When this happens, he will "try to sit back and calm down …." *Id*. at 100.

## III.   Medical Opinions

### A.   Dr. Bonds and Dr. Schulz

As noted previously, ALJ Redmond concluded in 2009 that Plaintiff was under a benefits-qualifying disability.   ALJ Redmond based this conclusion, in part, report by clinical psychologist Giovanni Bonds, Ph.D.   When Plaintiff was twenty years old (in 2005) Dr. Bonds examined him and administered IQ tests (Wechsler Adult Intelligence Scale-Third Edition).   Plaintiff obtained a verbal IQ score of 64, performance IQ of 73, and a full-scale IQ of 65.   (Doc. #6, *PageID* # 814).   Dr. Bonds explained that Plaintiff's

"Verbal and Full Scale IQ scores fall in the Extremely Low range (< 69) of intellectual functioning…."  *Id*.  Dr. Bonds listed Plaintiff's diagnoses to include a reading disorder and borderline intellectual functioning.  *Id*. at 816.  He reported that Plaintiff put forth adequate effort during testing and explained:

> The results of the current intellectual assessment placed John's intellectual functioning in the extremely low to borderline range (62-70) with no significant difference between his Verbal and Performance IQ scores.  John scored extremely low on Immediate and General delayed memory and borderline range for Working memory.  He was not able to read any of the stories on the reading test and this would place his reading abilities at less than first grade equivalent.

*Id*. at 815.

After Plaintiff was released from incarceration and after he applied for Supplemental Security Income, he was examined by clinical psychologist George O. Schulz, Ph.D.  He told Dr. Schultz that he had been in prison for one year during which he had participated in a three month inpatient-drug-treatment program during his incarceration.  *Id*. at 462.  Plaintiff married his wife in January 2013.  His relationship with his one son is "very good."  *Id*. at 461.

IQ testing (Wechsler Adult Intelligence Scale-Fourth Edition) administered by Dr. Schulz resulted in a Full Scale IQ composite score of 66.  *Id*. at 465.  This score was only one point greater than Plaintiff's full-scale score on the IQ test Dr. Bonds had administered.  Dr. Schulz listed Plaintiff's diagnoses to include borderline intellectual disorder.  Dr. Schulz reported, in part:

5

> The Full Scale IQ (FSIQ) composite score is derived from 10 subset scores and is considered the most representative estimate of global intellectual functioning.   John's general cognitive ability is within the extremely low range of intellectual functioning, as measured by FSIQ. His overall thinking and reasoning abilities exceed those of only approximately 1% of individuals his age ….

*Id.* at 466.   In his Functional Assessment of Plaintiff's work abilities, Dr. Schulz opined that (1) Plaintiff "is expected to be able to understand and apply instructions in the work setting within the borderline range of intellectual functioning"; (2) "given his performance today on the WAIS-IV[,] he is likely to experience some objective performance concerns by employers"; and (3) he "is likely to be able to respond appropriately to coworkers and supervisors in a work setting[.]"   *Id.* at 466-67.

## B.    State Agency Reviewers

In May 2013, Edmond Gardner, M.D. reviewed the record and assessed Plaintiff's physical Residual Functional Capacity (RFC) or the most he can do in a work setting despite his limitations.   *See* 20 C.F.R. § 416.945(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).   Dr. Gardner opined that Plaintiff could occasionally and frequently lift and/or carry ten pounds; he could stand and/or walk for a total of two hours; and he could sit about six hours in an eight-hour workday.   (Doc. #6, *PageID* #151).   Referring to ALJ Redmond's previous decision, Dr. Gardner recognized,

> The RFC given is an adoption of the ALJ dated 2/4/09.   The RFC is being adopted under the AR 98-4 Drummond Ruling: the clmt [claimant] was allowed for listing 12.05C; clmt's leg pain was an additional impairment.   Clmt's rt leg pain continues to impose an additional significant work-related limitation of function; "findings could reasonably be expected to restrict the clmt significantly in his

> ability to walk or stand for prolonged periods such as might be
> required for jobs requiring an exertional ability above the sedentary
> level."

*Id*. at 151-52 (quoting, in part, ALJ Redmond's decision, *PageID* #126).

In May 2013, Robyn Hoffman, Ph.D. reviewed the record and concluded that ALJ Redmond's previous decision should not be adopted because "the new file does have new and material changes." (Doc. #6, *PageID* #153). Dr. Hoffman reported that Plaintiff's "adaptive functioning has led two different psychologists to opine that a diagnosis of BIF [Borderline Intellectual Functioning] is warranted over a diagnosis of MR." *Id*. Dr. Hoffman observed that Plaintiff "is noted to perform a variety of household chores, seemingly limited only by his physical impairments." *Id*. After reviewing Plaintiff's additional activities, Dr. Hoffman opined, "His daily adaptive functioning exceeds the intent of 12.05C and based on the diagnoses of two separate psychologists, the clmt would be viewed as BIF, and as such, the ALJ's [Redmond's] decision should not be adopted." *Id*.

## IV.  **Supplemental Security Income**

The Social Security Administration provides Supplemental Security Income to indigent individuals, subject to several eligibility requirements. Chief among these is the "disability" requirement. To receive Supplemental Security Income, an applicant must be a "disabled individual." 42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase "disabled individual"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses only those who suffer from a

7

medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.   42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

On February 4, 2009, ALJ Redmond issued two decisions concerning Plaintiff. One decision concerned Plaintiff's application, on May 30, 2008, for Disabled Child Benefits.   (Doc. #6, *PageID* #123-27).   ALJ Redmond considered Plaintiff's application under the sequential-evaluation procedure set forth in 20 C.F.R. § 416.920(a)(4).   *See id*. Doing so, he concluded that Plaintiff had not attained age twenty-two on the date his disability began (December 31, 1998); he had the severe impairments of mild mental retardation and "residuals of a fracture with open reduction and internal fixation of his right leg …," *id*. at 125; and, his impairments met the criteria of Listing 12.05C[2] (mental retardation), starting on December 31, 1998.   This last conclusion meant that Plaintiff was under a benefits-qualifying disability before age twenty-two and was, therefore, entitled to Disabled Child Benefits.   *Id*. at 125-27.[3]

The second decision ALJ Redmond issued on February 4, 2009 reopened the application for Supplemental Security Income Plaintiff had previously filed on June 23, 2005.   *Id*. at 114-18.   ALJ Redmond found Plaintiff had the same severe impairments he identified in his other decision.   He likewise found that Plaintiff met the Listing (12.05C)

---

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

[3] Social Security Regulations "provide for the payment of disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22. (20 CFR 404.350(a)(5)).   (Doc. #6, *PageID* #123).

for mental retardation.

The upshot of ALJ Redmond's two decisions, when read together, was that the Social Security Administration found Plaintiff to be under a disability beginning on December 31, 1998 through and continuing after June 23, 2005.

All went well benefits-wise with Plaintiff until his incarceration. As previously indicated, he did not receive benefits during his incarceration and, upon his release, he needed to again apply for Supplemental Security Income.

The decision at issue in the present case occurred in 2014 when ALJ Kenyon reviewed Plaintiff's post-incarceration application for benefits and related evidence. Doing so, ALJ Kenyon made the following sequential findings, *see* 20 C.F.R. § 416.927(a)(4): Plaintiff had the severe impairments of borderline intellectual functioning, the residuals of a prior left leg fracture, and a history of drug abuse; his impairments did not satisfy the criteria of the Listings; he retained the RFC to perform sedentary work with many specific limitations;[4] and, a significant number of jobs existed in the national economy that Plaintiff could perform. These findings, plus ALJ Kenyon's other findings, led him to conclude that Plaintiff was not under a benefits-qualifying disability.

---

4 The ALJ found Plaintiff able to perform sedentary level work subject to the following limitations: "(1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no operation of foot controls; (5) unskilled, simple repetitive tasks; (6) no public contact; (7) no jobs requiring reading, writing or math above the first grade level; (8) no fast paced production work or strict quotas; and (9) limited to jobs in a static work environment in which there is very little change in the job duties or the work routine from one day to the next day." (Doc. #6, *PageID#* 72).

V.    **Standard of Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."   *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.   *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met— that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"   *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).   Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..."   *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.   *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.   "(E)ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"   *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478

F.3d at 746 and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir.

2004)).

## VI. <u>Discussion</u>

Acquiescence Ruling 98-4(6) discusses how the Social Security Administration will

apply administrative res judicata in light of *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d

837 (6th Cir. 1997).   The Ruling states:

> When adjudicating a subsequent disability claim with an
> unadjudicated period arising under the same title of the Act as the prior
> claim, adjudicators must adopt such a finding from the final decision by an
> ALJ or the Appeals Council on the prior claim in determining whether the
> claimant is disabled with respect to the unadjudicated period unless there is
> new and material evidence relating to such a finding or there has been a
> change in the law....

AR 98-(4)6, 1998 WL 283902 (June 1, 1998).

Plaintiff contends that ALJ Kenyon failed to properly apply AR 98-(4)6 by failing

to mention ALJ Redmond's previous decision and by vaguely mentioning the existence of

new evidence in the record.

The Commissioner first contends that AR 98-4(6) does not apply because there is no

presumption of continuing disability when a child receiving benefits turns age eighteen,

"notwithstanding the perceived stability of IQ scores."   (Doc. #11, *PageID* #848).   This

contention misses the mark under the facts of this case.

The "redetermination" statute the Commissioner relies on applies to a claimant who

is eligible to receive Disabled Child's Benefits turns age 18.   It states:

> If an individual is eligible for benefits … by reason of disability for
> the month preceding the month in which the individual attains the age of 18

11

years, the Commissioner shall redetermine such eligibility--

> by applying the criteria used in determining initial eligibility for individuals who are age 18 or older ....

42 U.S.C. § 1382c(a)(3)(H)(iii)(I). This statute does not apply in the present case because one of ALJ Redmond's two decisions on February 4, 2009 constituted a determination of Plaintiff's eligibility for Disabled Child Benefits, while the other decision constituted a redetermination of Plaintiff's eligibility for benefits after he turned age eighteen. Because this redetermination occurred before Plaintiff's incarceration, ALJ Kenyon's consideration of Plaintiff's post-incarceration application for benefits was not a redetermination under § 1382c(a)(3)(H)(iii). This statute therefore fails to support the Commissioner's contention that AR 98-4(6) did not apply to ALJ Kenyon's decision.

The Commissioner next argues that AR 98-4(6) did not apply to ALJ Kenyon's decision because cases from around the country have determined that when benefits are terminated due to incarceration, the claimant's new post-incarceration application "is to be evaluated under the five-step sequential analysis without regard to his prior successful application." (Doc. #11, *PageID* # 848). Yet, the three cases the Commissioner cites are neither precedential or persuasive. Each case was decided by District Court outside the geographic boundaries of the Sixth Circuit. The Social Security Administration explained in AR 98-4(6) that it would apply *Drummond* to cases within the Sixth Circuit (Ohio, Kentucky, Tennessee, and Michigan). Additionally, two of the Commissioner's cases did not consider what impact AR 98-4(6) or *Drummond* should have on the sequential analysis

of a post-incarceration application for benefits brought by a claimant whose disability benefits had been terminated due to his incarceration. *See Brennan v. Astrue*, 501 F.Supp.2d 1303, 1309 (D. Kan. 2007); *Hill v. Astrue*, No. 09-446-CL, 2010 WL 3361448, at *4 (D. Or. 2010). The Commissioner's third case, *Zavilla v. Astrue*, No. 09-133, 2009 WL 3364853 (W.D. Pa. 2009), considered *Drummond* but held, "While *Drummond* remains good law in the Sixth Circuit, this Court is not bound by the decision nor persuaded by its reasoning." 2009 WL 3364853, at *14. *Drummond*, of course, is binding precedent in this Court.

The Commissioner also maintains that the termination of Plaintiff's benefits due to his incarceration should be the focus because it was the most recent administrative decision. In light of this, the Commissioner reasons that if *Drummond* applies it should be applied to the termination decision.

These contentions lack merit. The authority cited by the Commissioner distinguishable from the present case. In *Messer v. Astrue*, No. 09-342, 2010 WL 4791956 (E.D. Ky., Nov. 18, 2010), the Court held that *Drummond* did not apply because an unfavorable decision had occurred between a previous decision favorable to the plaintiff—*i.e.*, the award of benefits plaintiff sought to repeat under *Drummond*—and the current denial of benefits the plaintiff was appealing. 2010 WL 4791956, *4-*5. Plaintiff's situation differs significantly from *Messer*. Plaintiff was found disabled starting in 1998, when he was a child. Upon redetermination of Plaintiff's eligibility for benefits during his early adult years, ALJ Redmond once again found him disabled. After

13

ALJ Redmond's favorable 2009 decisions, no unfavorable administrative decision occurred, until the one currently at issue by ALJ Kenyon.   In addition, "Whether the Drummond rule applies after termination of benefits due to incarceration was not answered in *Messer* …."   *Blevins v. Astrue*, No. 11-74-DLB, 2012 WL 3149343, *4 n.2 (E.D. Ky. July 31, 2012).

The Commissioner also relies on *Antico v. Astrue*, No. 1:11-cv-640, 2012 WL 4473157 (S.D. Ohio Sept. 26, 2012) (R&R by Bowman, M.J.), which declined to apply res judicata under Drummond because the plaintiff's prior benefits were awarded without a hearing in front of an administrative law judge.   The Court stated that "while no Sixth Circuit precedent forbids application of *Drummond* to cases such as this one, there is little reason to apply the rule where there has never been a trial-type hearing."   2012 WL 4473157, *5.   In contrast, Plaintiff had a trial-type hearing before ALJ Redmond in December 2008.   Given this, *Antico's* reason for not applying *Drummond* does not adhere to the present case

The Commissioner further contends that the termination of Plaintiff's benefits due to his incarceration was the last administrative decision and, as a result, *Drummond* should be applied to that decision instead of ALJ Redmond's favorable pre-incarceration decision. This reads too much into the termination of Plaintiff's benefits.   The termination of Plaintiff's benefits occurred after he was incarcerated for more than twelve consecutive months.   *See* 20 C.F.R. § 416.1335.   The termination was not because he improved medically or new evidence was discovered.   No ALJ or other officer of the Social Security

14

Administration reviewed or reconsidered the medical evidence at the time Plaintiff's

benefits were terminated.   No such review or reconsideration was required under the

Regulations.   *See id*.; *see also Blevins*, 2012 WL 3149343, *4 n.2.   There was no

post-incarceration decision addressing Plaintiff's medical evidence or applying the

five-step sequential evaluation for ALJ Kenyon to review.   The non-adjudicative

termination of Plaintiff's benefits due to his incarceration was not the last administrative

decision subject to review under AR 98-4(6) and *Drummond*.   The proper focal point for

an AR 98-4(6) and *Drummond* analysis was ALJ Redmond's decision in 2009 that Plaintiff

met the criteria of Listing 12.05C.

Turning to ALJ Kenyon's decision, he correctly recognizes that Plaintiff's IQ

testing produced "scores which bring the claimant's cognitive deficits within the scope of

12.05C and he was previously found to meet the requirements of that section."   (Doc. #6,

*PageID* #71) (citations omitted).   Indeed, Plaintiff's IQ scores upon tests administered by

Dr. Bonds placed his verbal IQ at 64 , his performance IQ at 73, and his full-scale IQ at 65.

*Id*. at 117.   Dr. Schultz administered IQ tests that placed Plaintiff's full-scale score at 66.

*Id*. at 466.   There is therefore no doubt that Plaintiff's IQ test results met the IQ-score

requirements of Listing 12.05C.

Perhaps the ALJ was concerned with the <u>validity</u> of Plaintiff's IQ scores, since

Listing 12.05C requires "[a] valid verbal, performance, or full scale IQ score of 60 through

70 …."   The ALJ did not find that Plaintiff's IQ scores were invalid but he did note, as the

Commissioner indicates, "There is … new evidence since the prior decision which

15

indicates that the claimant's level of adaptive functioning is well above that of an intellectually disabled individual."   (Doc. #6, *PageID* #71).   Substantial evidence, however, fails to support the ALJ's reasoning.

First, the ALJ states that Plaintiff graduated from high school.   To use this as a reason for finding improvement in Plaintiff's adaptive functioning overlooks the circumstances of his high school education.   ALJ Redmond pointed out that Dr. Bonds had reviewed a copy of Plaintiff's Individualized Education Plan (IEP) that was prepared when he was in school at ages seventeen to eighteen.   The IEP report stated that Plaintiff experienced "delayed cognitive ability, adaptive behavior delays in the areas of communication and daily living skills, and low academic skills …."   *Id*. at 117.   ALJ Redmond found, "The IEP supports the validity of the claimant's IQ and memory test scores …."   *Id*.   Plaintiff also attended special education classes throughout his schooling, according to Dr. Schulz.   *Id*. at 466.   In light of such evidence, ALJ Kenyon's reliance on Plaintiff's graduation from high school does not demonstrate an improvement in his adaptive functioning.

ALJ Kenyon next cited to several of Plaintiff's activities to show that his adaptive functioning had improved to the point it is well above the functioning of an intellectually disabled person.   There is, however, no reasonable inference between Plaintiff's activities and the ALJ's conclusion.   The ALJ notes that Plaintiff is married and has a five year old son; he enjoys fishing; and he is able to do a variety of household chores.   Plaintiff's ability to engage in these activities does not show the type or degree of improved adaptive

functioning the ALJ found. *Cf. Brown v. Sec'y of Health and Human Servs.*, 948 F.2d 268, 270 (6th Cir. 1991) (Mr. Brown's IQ scores not invalidated by fact he can use public transit, has a driver's license, visits friend, makes change at the grocery store, do his own laundry, clean his room, and drive a truck). The ALJ's reliance on Plaintiff's ability to engage in these activities denotes an ALJ that is determined to deny benefits rather than one engaged in a reasonable evaluation of the evidence.

The ALJ also pointed to Plaintiff's ability to use the internet, as indicated in Dr. Schultz's report. (Doc. #6, *PageID* # 463). Yet, Plaintiff uses the internet to perform basis tasks and needs assistance from his wife to send and receive emails. The computer he uses belongs to his father, suggesting that Plaintiff uses it at home at his leisure without time pressure. Such use does not lead to a reasonable conclusion that his adaptive functioning had improved to the point he was more capable than an intellectually disabled person.

The Commissioner also contends that information from the Social Security Administration's Office of Inspector General included several examples of medical improvement regarding Plaintiff's lower-extremity impairment. *Id.* The Commissioner's reliance on the those examples is unwarranted as it contradicts the ALJ's decision. ALJ Kenyon found that Plaintiff's residuals of a prior left leg fracture constituted a severe impairment. *Id.* at. 70. ALJ Kenyon incorporated multiple physical limitations in his assessment of Plaintiff's Residual Functional Capacity. *Id.* at 72. Third, the state agency physicians that the ALJ credited explicitly stated that the prior residual functional capacity,

with respect to the physical impairments and limitations, should be adopted. *See id.* at 74-75 (and Exhibits cited therein). Thus, the ALJ explicitly found that Plaintiff suffered from a severe physical impairment that caused him additional limitations in satisfaction of Listing 12.05C.

Accordingly, Plaintiff's challenges to the ALJ's decision at Step 3 of the sequential evaluation are well taken.

## VII.   Remand For Benefits Is Warranted

Remand is warranted when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746.   Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).   Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award

of benefits.   *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir.

1994).   The latter is warranted "only where the evidence of disability is overwhelming or

where the evidence of disability is strong while contrary evidence is lacking."   *Felisky v.

Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994) (quoting *Faucher v. Sec'y of Health & Humans

Servs*., 17 F.3d 171, 176 (6th Cir. 1994).

     In the present case, the evidence of record establishes that a remand for award of

benefits is warranted because the record contains overwhelming evidence, or strong

evidence while contrary evidence is lacking, that Plaintiff met the criteria of Listing

12.05C on the date he filed for Supplemental Security Income.   As discussed above,

*supra*, §VI, there is no doubt that Plaintiff's IQ test results met the IQ-score requirements

set forth in Listing 12.05C.   (Doc. #6, *PageID*#s 117, 466).   Additionally, ALJ Kenyon

determined that Plaintiff's severe impairments include the residuals of his previous leg

fracture and that his residual functional capacity for sedentary work—the least physically

active work described by the regulations, 20 C.F.R. § 415.967—was further limited to

occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and

stairs; to no climbing of ladders, ropes, and scaffolds; an no work around unprotected

heights or dangerous machinery.   Plaintiff therefore has a physical impairment that

imposes "significant work-related limitations of functions …," as Listing 12.05C

mandates.   For these reasons, and regardless of whether or not AR 98-4(6) and *Drummond*

apply to ALJ Redmond's previous decision, the present record establishes that Plaintiff

was under a benefits-qualifying disability on the date, August 31, 2012, he applied for

19

Supplemental Security Income.   He is consequently entitled to receive Supplemental

Security Income based on the application he filed on August 31, 2012.

## IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability finding be reversed and this case be
        remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for
        payment of benefits; and

2.      The case be terminated on the docket of this Court.


January 31, 2017

                                                *s/Sharon L. Ovington*
                                                Sharon L. Ovington
                                                United States Magistrate Judge

20

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).